UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LYDIA CHAIS

                    Plaintiff,

        v.

CITY UNIVERSITY OF NEW YORK
(CUNY), *et al.*,

                    Defendants.

**MEMORANDUM & ORDER**
25-CV-05104 (HG) (RML)

**HECTOR GONZALEZ**, United States District Judge:

The Court previously granted *pro se* Plaintiff Lydia Chais's request to proceed *in forma pauperis*, dismissed her complaint without prejudice, and granted her leave to amend the complaint.  *See* ECF No. 4 (Memorandum & Order).[1]  Plaintiff subsequently filed an amended complaint, asserting claims under 42 U.S.C. § 1983 ("Section 1983"), the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("Rehabilitation Act"), and the Fair Labor Standards Act ("FLSA").  *See* ECF No. 5 (Amended Complaint; "AC").  Specifically, Plaintiff alleges discrimination, retaliation, wage withholding, and due process violations by Defendants Kingsborough Community College ("KCC"), the City University of New York ("CUNY"), and District Council 37 ("DC 37"), among other Defendants.  *See id.*  For the reasons set forth below, Plaintiff's Amended Complaint is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B).

---

[1]      Unless otherwise indicated, when quoting cases and Plaintiff's amended complaint, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

**BACKGROUND**[2]

From March to September 2024, Plaintiff was employed as a College Assistant Writing Tutor at KCC's Learning Center ("KLC").  AC at 8 ¶¶ 1–2.  During Plaintiff's employment, Defendants Michael Weisenfeld, KLC Director, and Mohammed Riyad, KLC Associate Director, allegedly instructed Plaintiff to reduce the number of work hours she recorded on her timesheets, or in other words, to falsify her timesheets.  *Id.* at 8 ¶¶ 3–4.  After Plaintiff refused, Defendants purportedly retaliated against her by sending "harassing emails copied to administrators and union contacts, falsely implying [her] misconduct," withholding her wages, reducing her hours, *id.* ¶¶ 5–6, 8, and denying her leave, *id.* at 14 ¶ 3.  On September 13, 2024, Plaintiff "was constructively dismissed."  *Id.* at 11 ¶ 16.

Plaintiff alleges that she has a "documented disability," and although she disclosed the disability and her related funding[3] to her employer, Defendants failed to engage in the required ADA process.  AC at 8 ¶¶ 9–10.  Plaintiff allegedly notified Defendants and KCC employees Beth Douglas, Legal Counsel; Gila Rohr, Human Resources ("HR") Director; Sharon Warren Cook, Provost; and Alex Kisel, Central HR Administrator, of the ADA violations, retaliation, and wage issues, but they failed to take action.  *Id.* at 8–9 ¶ 11A.  Moreover, Plaintiff asserts that at a 2025 hearing, Defendants Rohr and Riyad withheld information about her disability from the Administrative Law Judge, which led to denial of her unemployment benefits and imposition of an overpayment assessment.  *Id.* at 9 ¶ 11B.  Finally, Plaintiff alleges that DC 37 ignored her

---

[2]     The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts."  *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

[3]     Plaintiff receives "ACCES[]-VR funding through the state vocational-rehabilitation program."  AC at 8 ¶ 9.

request for representation at that hearing, *id.* at 10 ¶ 12, and took retaliatory actions against her by supporting a *Guardian ad Litem* ("GAL") filing that lacked a medical basis and by referring her to Adult Protective Services, *id.* at 12 ¶ 18.

Plaintiff further alleges that she submitted several letters to Defendants. Namely, she asserts that she sent a "Retaliation and Demand Letter" to Riyad in September 2024. AC at 10 ¶ 13, and demand letters to CUNY Chancellor Félix V. Matos Rodríguez on April 8, 2025, and May 4, 2025, in which she reported FLSA violations, *id.* at 3–4 ¶ 6. Plaintiff alleges that, despite these letters, no action was taken. *See id.* at 3 ¶¶ 6, 10 ¶ 13.

After Plaintiff was "constructively dismissed" from KCC on September 13, 2024, *id.* at 11 ¶ 16, she filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter on December 1, 2025, *see* ECF No. 7 (Right-To-Sue Letter), approximately three months after she commenced this suit.

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Though courts are required to hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), *pro se* plaintiffs still must comply with Rule 8, *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir.

3

2019). While "detailed factual allegations are not required," *Twombly*, 550 U.S. at 678, "[i]t is not enough to say that the defendant harmed me; the claim must include factual details that, if true, would show that the defendant broke the law" and is responsible for the harm to the plaintiff, *Ramjas v. Wilknowski*, No. 25-cv-3289, 2025 WL 1787168, at *1 (E.D.N.Y. June 27, 2025) (quoting *Iqbal*, 556 U.S. at 678). To satisfy this standard, the complaint must, at a minimum, "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000). In other words, Rule 8 "merely requires that any complaint be simple, direct and concise." *Turner v. Cnty. of Suffolk*, 955 F. Supp. 175, 176 (E.D.N.Y. 1997).

Finally, under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

## **DISCUSSION**

### I.      **Plaintiff Fails to Comply with Rule 8**

As an initial matter, the Amended Complaint fails to comply with Rule 8's requirement that Plaintiff provide a "short and plain" statement of her claims against Defendants "to permit [them] to have a fair understanding of what [P]laintiff is complaining about and to know whether there is a legal basis for recovery." *Harnage*, 916 F.3d at 141. Under Rule 8, a *pro se* complaint may be dismissed if it "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Here, despite the Court's warning that Plaintiff's "amended complaint must comply with Rule 8(a)," ECF No. 4 at 5, the Amended Complaint only further confuses Plaintiff's claims.

4

Specifically, although Plaintiff maintains nine total claims, she increases the number of Defendants from 14 to 23, *compare* Complaint at 2–4, *with* AC at 3–7 ¶¶ 2–25, while presenting her claims in a manner that does not make clear against whom her claims are brought.

The Amended Complaint starts by listing 23 Defendants, along with their titles and vague allegations against them. *See* AC at 3–7 ¶¶ 2–25. It then proceeds to the "Statement of Facts," which includes slightly more particularized allegations, but also several assertions of harm committed by Defendants generally. *See, e.g., id.* at 8 ¶ 5 ("Defendants then issued harassing emails[.]"), ¶ 10 ("Defendants failed to engage in the interactive process required by ADA Title II and § 504 of the Rehabilitation Act."), 13 ¶ 23 ("Plaintiff suffered lost wages, emotional distress, and housing instability resulting from Defendants' actions and customs[.]"). Indeed, Plaintiff seems to have named as many Defendants as possible, without sufficient supporting allegations against each one. For example, Plaintiff names Dr. Suri Duitch and Norlita Detaza in the list of Defendants, but then fails to allege anything against them.[4] *Compare* AC at 4–5 ¶¶ 7, 17, *with id.* at 8–13.

By the time the Court reaches the "Claims for Relief" section, the pleading is already unclear. This section does not provide any clarity. Under Rule 8(a), these claims should "indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants." *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 219 (S.D.N.Y. 1997). Here, however, Plaintiff merely lists Counts I through IX, recites the elements of each cause of action, and alleges that Defendants generally were responsible for each claim. *See* AC at 14–19. Rather than making these claims clear, Plaintiff appends to the

---

[4]    Plaintiff further drops any mention of Duitch from her "Accountability Flowchart." *See* AC at 22–23.

Amended Complaint an "Accountability Flowchart," a table in which she lists some of the Defendants, their purported "Violation(s)," and a "Summary of Conduct / Supporting Evidence." *See id.* at 22–23.

Plaintiff's flowchart raises more questions than it answers. For example, Plaintiff includes only 18 Defendants in the flowchart, well short of the 23 that she listed at the beginning of the Amended Complaint.[5] *Compare* AC at 22–23, *with id.* at 3–7 ¶¶ 2–25. Not only does Plaintiff drop several Defendants from the flowchart, but she adds a new one: Dishunta Meredith, who is not mentioned elsewhere in the Amended Complaint. *See id.* at 22. Next, the "Violation(s)" section of the flowchart does little to clarify Plaintiff's claims. This is evident through a comparison of that section with the earlier "Claims for Relief" section, in which Plaintiff alleges, among other claims, two ADA violations: Title II and retaliation thereunder. *See id.* at 14–15. Inexplicably, the flowchart contains no fewer than seven permutations of these ADA-related claims, interchangeably describing the violations as "ADA Violation/Retaliation," "ADA Title II," "ADA Title II/Retaliation," "ADA Retaliation," "ADA Supervisory Liability," "ADA Institutional Liability," and "ADA Neglect." *See id.* at 22–23. This shotgun method of pleading falls significantly short of Rule 8(a)'s requirement that the claims should "indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants." *Yucyco, Ltd.*, 984 F. Supp at 219. If the Court struggles to discern, despite its best efforts, the basis for the claims and against whom they are brought, Defendants surely will not be able to do so.

---

[5]     Absent from the "Accountability Flowchart" are CUNY, KCC, Douglas, the DC 37, Executive Board of CUNY Human Resources, and the DC 37 Legal Department. *Compare* AC at 3–7 ¶¶ 2–25, *with id.* at 22–23.

The Amended Complaint's many ambiguities, ranging from the extensive and inconsistent number of Defendants to the confusing timeline and generalized description of claims against Defendants and ultimately to the flowchart that Plaintiff attempts to pass as a sufficient means of pleading, flies in the face of Rule 8.  But even if the Amended Complaint did not violate Rule 8, it nevertheless fails to state a claim and seeks monetary relief against certain Defendants immune from suit, and it therefore must be dismissed under 28 U.S.C. § 1915(e)(2)(B).

## II.    Plaintiff's Section 1983 Claims

The Court begins by addressing Plaintiff's claims brought pursuant to 42 U.S.C. § 1983.  Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).  To state a Section 1983 claim, a plaintiff must allege "(1) that the defendants deprived [her] of a right secured by the Constitution or laws of the United States; and (2) that they did so under color of state law."  *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001).

### A.    Claims Against HRA, NYCHA, and APS

First, Plaintiff brings Section 1983 claims against the City's Human Resources Administration ("HRA"), the New York City Housing Authority ("NYCHA"), and Adult Protective Services ("APS"), a program administered by the HRA, alleging that they violated her

Fourteenth Amendment due process rights by "mishandling benefits and participating in retaliatory coordination with other City agencies" (HRA), "mismanaging Plaintiff's voucher records and creating contradictory tenancy data" (NYCHA), and "initiating baseless referrals and supporting a GAL appointment without judicial findings of incapacity" (APS). *See* AC at 6 ¶¶ 22–24.

The HRA and APS are municipal agencies of the City of New York and thus cannot be sued in their own names. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Avila v. Acacia Network, Inc.*, No. 24-cv-0884, 2024 WL 4108012, at *8 (S.D.N.Y. Aug. 26, 2024) (APS not a suable entity); *Sibble v. Human Resources Administration*, No. 22-cv-5603, 2023 WL 7019113, at *2 (S.D.N.Y. Oct. 24, 2023) (HRA not a suable entity). Accordingly, Plaintiff's Section 1983 claims against the HRA and APS are dismissed for failure to state a claim.

NYCHA, however, is a suable entity. *See Hartley v. Guida*, No. 19-cv-6152, 2020 WL 4194196, at *5 n. 6 (E.D.N.Y. July 21, 2020). It is a "separate municipal corporation with its own charter." *Southerland v. Woo*, No. 99-cv-3329, 2013 WL 5552628, at *1 (E.D.N.Y. Oct. 3, 2013). Plaintiff brings a Fourteenth Amendment due process claim against NYCHA, alleging that it "mismanage[ed] [her] voucher records and creat[ed] contradictory tenancy data." AC at 23, 6 ¶ 23.[6] Plaintiff further alleges that NYCHA "[m]ishandled housing records; issued conflicting vouchers; [and] enabled GAL abuse and financial instability." *Id.* at 23; *see also id.* at 13 ¶ 20B. Such conclusory assertions are insufficient to state a claim. But even accepting

---

[6]     Plaintiff also brings an ADA claim against NYCHA, *see* AC at 23, but for the reasons discussed in Part III, all of Plaintiff's ADA claims are dismissed.

these allegations as true, a due process claim against a municipality cannot survive unless the alleged violation was "part of an official policy or custom." *Palumbo v. Manhattan & Bronx Surface Transit Operating Auth.*, 346 F. Supp. 2d 493, 495 (S.D.N.Y. 2004). As discussed below in Part II.C, Plaintiff fails to allege a municipal policy or custom, and her Fourteenth Amendment due process claim against NYCHA is therefore dismissed.

####        B.        Claims Against KCC, CUNY, DC 37, and Related Individuals

Plaintiff next brings Section 1983 claims against KCC,[7] CUNY, DC 37, and a number of individual Defendants who work for, or are associated with, those entities, in both their individual and official capacities. Plaintiff asserts Fourteenth Amendment procedural due process and equal protection claims against Nora Ule Rose, Weisenfeld, and Whalen (Count IV); a First Amendment retaliation claim against Meredith,[8] Detaza, and Rosemary Colón (Count V); a Fourteenth Amendment substantive due process claim against unspecified Defendants (Count VI); a Thirteenth Amendment coerced labor and involuntary servitude claim against Rodríguez and Weisenfeld (Count VII);[9] *Monell* claims against Meredith, Rodríguez, the CUNY Board of Trustees, DC 37 Executive Leadership, Duitch, and Kisel (Count VIII);[10] and an Eighth Amendment deliberate indifference and retaliation claim against Rohr (Count IX). *See* AC at

---

[7]        KLC is a subdivision of KCC. The Court refers to them collectively as "KCC."

[8]        Through the Amended Complaint references Meredith only in the flowchart, the Court interprets the pleading in the light most favorable to Plaintiff and construes it as bringing against Meredith those claims shown in the flowchart.

[9]        Although Plaintiff brings Count VII directly under the Thirteenth Amendment, *see* AC at 17, the Court construes the claim as being asserted under Section 1983, "which provides the exclusive federal remedy for violations of constitutional rights by state actors." *Fernandes v. Fam. Ct. of Nassau Cnty.*, No. 25-cv-2640, 2026 WL 817962, at *5 (E.D.N.Y. Mar. 25, 2026).

[10]        The Court discusses Plaintiff's *Monell* claims in Part II.C.

14–19; 22–23.[11]  The Court refers to Rohr, Weisenfeld, Riyad, Cook, and Duitch collectively as the "KCC Defendants"; CUNY, the CUNY Board of Trustees, Rodríguez, and Kisel collectively as the "CUNY Defendants"; and Detaza, Rose, Colón, Meredith, DC 37 Executive Leadership, and Whalen collectively as the "DC 37 Defendants."

> i.       Claims Against KCC, CUNY, and Related Individuals in their Official Capacities

Plaintiff brings Section 1983 claims against KCC and CUNY.  CUNY is immune from suit because it is an "arm of the state" and therefore all claims against the CUNY Board of Trustees are dismissed.[12]  *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 83 (2d Cir. 2004); *see also Husain v. Springer*, 193 F. Supp. 2d 664, 668 (E.D.N.Y. 2002) (collecting cases).  Because Rodríguez and Kisel are employees of CUNY, claims against them in their official capacities are likewise barred by the Eleventh Amendment.  *See Mallet v. New York State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 138 (2d Cir. 2025) ("[A] Section 1983 claim for damages against a state official can only be asserted against that official in his or her individual capacity.").  But "[u]nlike the senior colleges of the CUNY system, community colleges such as [KCC] are not subject to sovereign immunity under the Eleventh Amendment." *See Knights v. City Univ. of N.Y.*, 639 F. Supp. 3d 395, 400 n. 1 (E.D.N.Y. 2022).  Instead, "[KCC] is to be

---

[11]    Plaintiff also names Beth T. Douglas, President's Designee and Executive Counsel at KCC, as a Defendant, but fails to include her in the specific count-based allegations, *see* AC at 14–19, or in the "Accountability Flowchart," *see id.* at 22–23.  The Court therefore dismisses the claims against Douglas for failure to comply with Rule 8. *See Moriates v. City of New York*, No. 13-cv-4845, 2016 WL 3566656, at *4 (E.D.N.Y. June 24, 2016) ("A plaintiff's failure to make any allegations against a defendant she has named is fatal to her claims against that defendant.") (citing Fed. R. Civ. P. 8).

[12]    To the extent Plaintiff brings claims against CUNY, which she names as a Defendant in the "Parties" section of the Amended Complaint, AC at 3 ¶ 2, but fails to allege claims against it in the remainder of the Amended Complaint, those claims are also dismissed.

10

treated as a city agency." *See Tribuzio v. Kingsborough Cmty. Coll.*, 244 N.Y.S.3d 439, 446 (N.Y. Civ. Ct. 2025). Consequently, claims may be brought against the KCC Defendants in both their individual and official capacities. *See Cass v. Cnty. of Suffolk*, No. 01-cv-03348, 2005 WL 1115472, at *3 (E.D.N.Y. May 11, 2005). Section 1983 claims against these Defendants in their official capacities are treated as against the municipality itself and subject to *Monell*. *See Richards v. City of New York*, No. 20-cv-3348, 2023 WL 3738489, at *6 (S.D.N.Y. May 30, 2023) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). As discussed in Part II.C, below, Plaintiff fails to state a *Monell* claim, and therefore, she fails to state a claim against these Defendants in their official capacities. And Plaintiff's claims against these Defendants in their individual capacities fail for the reasons discussed in Part II.B.ii, below.

ii.    Claims Against KCC Defendants and CUNY Defendants in their Individual Capacities

To succeed on a procedural due process claim, Plaintiff must establish "(1) that [she] possessed a liberty interest and (2) that the [Defendants] deprived [her] of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). Plaintiff asserts that she "had a protected property interest in earned wages and continued employment." AC at 16. True, Plaintiff had a protected property interest with respect to earned wages, *see Cheeseman v. Carey*, 485 F. Supp. 203, 218 n. 24 (S.D.N.Y. 1980), but not in continued employment, *see Goetz v. Windsor Central School Dist.*, 698 F.2d 606, 608 (2d Cir. 1983) ("[A]t will employees possess no protectable property interest in continued employment.").[13] In support of her due process claim, Plaintiff alleges that "[her] Spring 2024 wages were withheld without cause," AC

---

[13]    Under New York law, "unless a definite period of time is specified in an employment contract, the hiring is at will." *DiRose v. PK Management Corp.*, 691 F.2d 628, 633 (2d Cir. 1982). Plaintiff has not provided any allegations to indicate that her employment was not at will and the Court proceeds with its analysis accordingly.

at 8 ¶ 6, and that she was deprived of this property interest as a result of insufficient process because "Defendants denied her notice, hearing, or review before withholding wages," *id.* at 16. Moreover, the only Defendant identified as engaging in specific action relevant to this claim is Weisenfeld, who Plaintiff alleges in perfunctory fashion "withheld [her] wages." *See id.* at 23. While the Court is required to construe the Amended Complaint in the light most favorable to the Plaintiff, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678. Plaintiff therefore fails to state a Fourteenth Amendment procedural due process claim.

Plaintiff further alleges that "[s]imilarly situated employees were treated more favorably" in violation of the Equal Protection Clause. AC at 16. To state an equal protection claim, Plaintiff "must demonstrate that [she] was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). As with her due process claim, Plaintiff offers nothing more than a "threadbare recital[] of the elements of a[n] [equal protection] cause of action," *see Iqbal*, 556 U.S. at 678, which is insufficient to state an equal protection claim, *see Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011). Accordingly, Plaintiff's equal protection claim fails. Count IV is therefore dismissed.

Plaintiff next alleges a First Amendment retaliation claim against several Defendants, including Meredith, Detaza, and Colón (Count V). She claims that she "engaged in protected speech . . . by sending a formal registered-mail complaint to CUNY officials" and that "Defendants responded with wage withholding, hour reductions, and denial of leave," and in doing so, violated her right to petition. AC at 16. To state a First Amendment retaliation claim Plaintiff must show, among other things, that "the speech at issue was made as a citizen on

12

matters of public concern rather than as an employee on matters of personal interest[.]" *Vanderpuye v. Cohen*, 94 Fed. App'x 3, 4–5 (2d Cir. 2004). Here, Plaintiff has offered no facts to indicate that her speech was on a matter of public concern. Moreover, "[e]ven as to an issue that could arguably be viewed as a matter of public concern, if the employee has raised the issue solely in order to further [her] own employment interest, [her] First Amendment right to comment on that issue is entitled to little weight." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir. 1993); *see also Borough of Duryea v. Guarnieri*, 564 U.S. 379, 398 (2011) ("If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way."); *Santiago v. Newburgh Enlarged City School Dist.*, 485 F. Supp. 2d 327, 338 (S.D.N.Y. 2007) ("[I]t is clear that complaints about one's working conditions are a personal grievance, not a matter of public concern protected by the First Amendment.") (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). Because Plaintiff has offered no allegations to show that her complaint was on matters of public concern, but rather pleads facts showing that her speech was a means of furthering her own employment interests, the Court dismisses Count V.

Plaintiff further asserts a Fourteenth Amendment substantive due process claim for "Deprivation of Liberty Interest in Mental and Emotional Well-Being" (Count VI). AC at 17. Specifically, Plaintiff alleges that Defendants "refused to accommodate her or remove her from a hostile environment" despite their knowledge of her "mental-health disability and the risk that continued retaliation and economic deprivation would cause harm." *Id.* "A government employer violates an employee's substantive due process rights only when it abuses power that it holds because of its role as a government actor." *Bertram v. Metro. Transp. Auth.*, No. 13-cv-338, 2014 WL 748933, at *7 (S.D.N.Y. Feb. 26, 2014) (citing *McClary v. O'Hare*, 786 F.2d 83,

13

89 (2d Cir. 1986)). A substantive due process claim "must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Velez v.* Levy, 401 F.3d 75, 93 (2d Cir. 2005). Plaintiff does not allege anything close to an abuse of power unique to Defendants' status as government actors, nor does she assert any conduct egregious or outrageous enough to sustain a substantive due process claim. *See Bertram*, 2014 WL 748933, at *7–8. An alleged failure to accommodate, and a hostile work environment, however troubling, do not approach that threshold. *See Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (substantive due process does not protect "against government action that is incorrect or ill-advised") (quoting *Bishop v. Wood*, 426 U.S. 341, 350 (1976)); *see also Goldfarb v. Town of W. Hartford*, 474 F. Supp. 2d 356, 371–72 (D. Conn. 2007) (explaining that workplace harassment and bullying, generally, do not amount to a violation of substantive due process). Moreover, Plaintiff fails to adequately allege which Defendants violated her substantive due process rights. *See Iqbal*, 556 U.S. at 678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Accordingly, Count VI is dismissed.

Finally, Plaintiff's claim of coerced labor and involuntary servitude in violation of the Thirteenth Amendment (Count VII) is equally without merit. *See* AC at 17. Plaintiff does not allege compulsion or coercion as required for such a claim. *See United States v. Kozminski*, 487 U.S. 931, 952 (1988) (defining involuntary servitude as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process"); *see also Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 459 (2d Cir. 1996) ("The Thirteenth Amendment does not bar labor that an individual may, at least in some sense, choose not to perform, even where the

14

consequences of that choice are exceedingly bad."). Count VII is therefore dismissed for failure to state a claim.

### iii.    Claims Against DC 37 and Related Individuals

Plaintiff's Section 1983 claims against those individual Defendants employed by DC 37 are dismissed because labor unions are not generally state actors, DC 37's representation of public employees does not make it a state actor, and Plaintiff fails to allege sufficient facts to show DC 37 acted under color of state law. *See Marrero v. City of N.Y.*, No. 02-cv-6634, 2003 WL 1621921, at *4 (S.D.N.Y. Mar. 28, 2003). Specifically, Plaintiff's Fourteenth Amendment claims against Rose and Whalen, the *Monell* claims against Meredith and DC 37 Executive Leadership, and the Eighth Amendment claim against Rohr are dismissed.[14]

### C.    Monell Claims

Plaintiff next brings *Monell* claims against three of the entity Defendants, alleging that "CUNY, DC 37, and the City of New York maintained customs of neglecting ADA and FLSA compliance, failing to investigate retaliation, and misusing guardianship mechanisms against complainants," with the policies "ratified through deliberate inaction by high-level officials" (Count VIII). AC at 18. As discussed above, Plaintiff's claims against CUNY and DC 37 are dismissed. CUNY is immune from suit under the Eleventh Amendment, *see Clissuras*, 359 F.3d at 83, and DC 37 is not a state actor and therefore cannot be subject to a *Monell* claim, *see*

---

[14]    Even if Plaintiff had sufficiently alleged that these Defendants were state actors acting under color of state law, the Fourteenth Amendment claims would still fail for the reasons discussed in Part II.B.ii. The *Monell* claims would fail for the reasons discussed in Part II.C. And Count IX would otherwise fail because "the Eighth Amendment . . . addresses constitutional rights in criminal matters, and this action deals with Plaintiff's employment." *Marshall v. Nat'l Ass'n of Letter Carriers BR36*, No. 02-cv-1754, 2004 WL 2202574, at *4 (S.D.N.Y. Sept. 30, 2004); *see also Ingraham v. Wright*, 430 U.S. 651, 664 (1977) ("[T]he proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes.").

*Marrero*, 2003 WL 1621921, at \*4; *see also Richardson v. Westchester Cnty.*, No. 20-cv-5907, 2022 WL 785217, at \*7 (S.D.N.Y. Mar. 15, 2022).[15]

As for the City of New York, a municipal entity ordinarily "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). *Monell* allows Section 1983 claims against municipalities, though "only for constitutional deprivations inflicted pursuant to a governmental custom or policy." *Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439, 446 (S.D.N.Y. 1999). To succeed on a *Monell* claim, a plaintiff must "prove the existence of a municipal policy or custom" that caused the "deprivation of [her] constitutional rights." *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). But conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim. *See Vasquez v. City of New York*, No. 20-cv-4641, 2023 WL 8551715, at \*4–5 (S.D.N.Y. Dec. 11, 2023) (collecting cases). "And, where a plaintiff fails to identify a specific policy or custom that caused the alleged constitutional violation, the claims against the municipality must be dismissed." *McKiver v. City of New York*, No. 17-cv-04411, 2018 WL 3543907, at \*4 (S.D.N.Y. May 16, 2018) (citing *Costello v. City of Burlington*, 632 F.3d 41, 49 (2d Cir. 2011)).

The Amended Complaint is devoid of facts showing the existence of a policy or practice of the City of New York that caused the alleged constitutional violation. Plaintiff points to the

---

[15] Plaintiff also brings *Monell* claims against Meredith and Duitch, which the Court treats as *Monell* claims against the municipality. *See Kukaj v. Town of Eastchester*, No. 24-cv-08942, 2026 WL 369600, at \*11 (S.D.N.Y. Feb. 10, 2026) ("[A] *Monell* claim cannot be pleaded against an individual. . . . And a *Monell* claim asserted against an individual defendant acting in [their] official capacity is treated as a suit against the municipality."). Moreover, the Court treats Plaintiff's claims against the KCC Defendants in their official capacities as *Monell* claims, *see Richards*, 2023 WL 3738489, at \*6, but finds that they fail to state a claim because Plaintiff does not show an underlying constitutional violation, *see* Part II.B; *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

16

"coordinated inaction of [Douglas, Rohr, Cook, and Kisel]" as demonstrating "an established policy of deliberate indifference[.]"  AC at 8 ¶ 11A.  Specifically, Plaintiff alleges that "Rohr's denial of medical leave and refusal to engage in the ADA interactive process" were reported to Douglas who, after "receiv[ing] the . . . union cease-and-desist letter and participat[ing] in the Step One and Step Two grievance proceedings . . . failed to recommend corrective action."  *Id.* at 9 ¶ 11A.  Plaintiff further asserts that Cook had "constructive notice and a duty to intervene" and that Kisel's office was "on constructive notice that retaliation, wage withholding, and ADA noncompliance were occurring[.]"  *Id.*  According to Plaintiff, these facts "constitute the administrative pattern and custom necessary to establish *Monell* liability against CUNY and its Board of Trustees."  *Id.*  In fact, however, these allegations are insufficient to establish *Monell* liability because they point to statutory, not constitutional, violations.  *See Mastromonaco v. Cnty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) ("It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation.").

Plaintiff supplements her theory by listing a number of discrete violations she allegedly suffered at the hands of Defendants.  *See* AC at 22–23.  These allegations are insufficient to state a *Monell* claim because they do not assert an underlying constitutional violation.  *See Mastromonaco*, 779 F. App'x at 51.  Plaintiff first alleges that Rodríguez "[r]eceived [the] April 8 and May 4, 2025, wage demand letters; acknowledged 190 hours owed but authorized only partial payment."  AC at 22.  But Plaintiff brings only a Thirteenth Amendment claim against Rodríguez, which, as discussed above, is not actionable.  As to Kisel, by alleging that he "[h]eld oversight responsibility for ADA and FLSA compliance" and "failed to act after escalation of retaliation evidence," Plaintiff similarly fails to assert a constitutional violation and therefore does not state a *Monell* claim.  *See Mastromonaco*, 779 F. App'x at 51.  Next, Plaintiff alleges

that Duitch "[i]gnored employee complaints and demand letters" and "allowed systemic retaliation to continue under her authority." AC at 23. Beyond these vague and conclusory assertions, the remainder of the Amended Complaint is devoid of allegations against Duitch, and, in any event, the allegations do not assert a constitutional violation. *See Mastromonaco*, 779 F. App'x at 51. Lastly, Plaintiff makes the general assertion that the City of New York "[f]ailed to supervise agencies (HRA, NYCHA, APRS) [and] permitted systemic retaliation against [a] disabled tenant and whistleblower." AC at 23. But "conclusory allegations that a municipality failed to train and supervise its employees are insufficient to state a *Monell* claim absent supporting factual allegations." *Hodge v. City of Mount Vernon*, No. 25-cv-2736, 2026 WL 637092, at \*10 (S.D.N.Y. Mar. 6, 2026). That Defendants purportedly made decisions that Plaintiff does not agree with does not suffice to show the existence of a policy under *Monell*.[16]

Count VIII is therefore dismissed.

### III.    Plaintiff's Claims Under the ADA and the Rehabilitation Act

Plaintiff next brings claims for violations of the ADA and Rehabilitation Act (Count I) and retaliation under the ADA (Count II).[17] The Amended Complaint does not make clear against which Defendants Counts I and II are brought. Each Count discusses only vague

---

[16]    Plaintiff also includes in this list allegations against Meredith, DC 37, and CUNY. But as discussed above, there can be no *Monell* liability as to these Defendants.

[17]    "Under the ADA, before filing a claim in federal court, a plaintiff must exhaust administrative remedies by filing a charge with the EEOC." *Pediford-Aziz v. City of New York*, 170 F. Supp. 3d 480, 484 (E.D.N.Y. 2016). Here, Plaintiff's receipt of a right-to-sue letter from the EEOC on December 1, 2025, *see* ECF No. 7, cures any potential exhaustion defects, *see Brunson-Bedi v. New York*, No. 15-cv-9790, 2018 WL 2084171, at \*4 (S.D.N.Y. May 1, 2018) ("Plaintiff's receipt of the . . . right-to-sue letter, albeit issued and received after the initiation of this lawsuit, renders any prior exhaustion defects cured."). The Rehabilitation Act does not contain an exhaustion requirement. *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 81–82 (2d Cir. 2020).

transgressions committed by Defendants generally. *See* AC at 14–15. In the "Accountability Flowchart," Plaintiff interchangeably describes the violations as "ADA Violation/Retaliation," "ADA Title II," "ADA Title II/Retaliation," "ADA Retaliation," "ADA Supervisory Liability," "ADA Institutional Liability," and "ADA Neglect." *See id.* at 22–23. Construing the Amended Complaint liberally, the Court finds each different permutation listed above to constitute allegations of violations of the ADA and Rehabilitation Act and retaliation under the ADA. Therefore, Plaintiff brings Counts I and II against Detaza, Rose, Colón, DC 37 Executive Leadership, Riyad, Cook, Duitch, Kisel, Whalen, CUNY, DC 37, and the City of New York.

To begin, Plaintiff may not bring ADA retaliation claims against individuals and, therefore, her Count II claims against Detaza, Rose, Colón, Riyad, Cook, Duitch, Kisel, and Whalen are dismissed. *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010). Plaintiff's ADA retaliation claims against DC 37 and DC 37 Executive Leadership are also dismissed because Plaintiff is not an employee of DC 37 and, therefore, she does not have the right to sue under the ADA. *See Lauria v. Donahue*, 437 F. Supp. 2d 131, 140 (E.D.N.Y. 2006) ("[I]f an individual is neither an employee, nor former employee of a company, he or she does not have the right to sue under the ADA."). Furthermore, because "the Rehabilitation Act does not provide for individual liability," Plaintiff's claims against individual Defendants arising thereunder are also dismissed. *See Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022). And, although the Second Circuit has not explicitly addressed whether individuals can be held personally liable under the ADA, district courts in the circuit have consistently held that there is no individual liability under the ADA. *See Lavender v. Verizon N.Y. Inc.*, No. 17-cv-6687, 2023 WL 1863245, at *12 (E.D.N.Y. Feb. 9, 2023) (collecting cases). The Count I ADA claims against individual

19

Defendants are therefore dismissed as well.  That leaves only Plaintiff's claims against CUNY and the City of New York which, as explained below, also fail.

The standards under the ADA and the Rehabilitation Act are generally the same such that courts treat claims under both statutes identically.  *See Congemi v. Sachem School Dist.*, No. 11-cv-01561, 2017 WL 5508810, at *7 (E.D.N.Y. Jan. 19, 2017) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).  Both statutes "prohibit discrimination based on disability" and "prohibit retaliation against an individual for opposing any act or practice made unlawful" by the respective acts.  *See Rubin v. New York City Bd. of Educ.*, No. 20-cv-10208, 2023 WL 1972729, at *11 (S.D.N.Y. Jan. 6, 2023).

To establish a prima facie discrimination claim under the ADA and the Rehabilitation Act, Plaintiff must show, among other things, that she "is a qualified individual with a disability[.]" *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 953 (2d Cir. 2024).  To allege a disability, Plaintiff "must allege a factual basis that would support a finding of substantial limitation of a major life activity, and may not rely upon conclusory allegations of such a limitation." *Parisi v. Coca-Cola Bottling Co. of N.Y.*, 995 F. Supp. 298, 302 (E.D.N.Y. 1998).  Here, despite being granted leave to amend her complaint to specify the nature of her disability and provide facts supporting her related allegations, *see* ECF No. 4 at 3–4, Plaintiff fails to do so.  Plaintiff's allegations that she had a disability and that she "was a qualified individual with a disability within the meaning of the ADA and § 504 [of the Rehabilitation Act]," AC at 14, constitute only a "[t]hreadbare recital[] of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, and are insufficient to state a claim.  *See Aquino v. Prudential Life & Cas. Ins. Co.*, 419 F. Supp. 2d 259, 269 (E.D.N.Y. 2005) (finding allegations that plaintiffs are "qualified individuals with disabilities . . . under Sect[ion] 504 of the 1973 Rehabilitation[] Act" conclusory and

insufficient); *Doe v. Columbia Univ.*, No. 25-cv-2132, 2026 WL 810421, at *9 (S.D.N.Y. Mar. 23, 2026) (finding "a conclusory allegation that [plaintiff] is a qualified individual with a disability" insufficient to state a claim under the ADA).  The closest Plaintiff comes to alleging she is a qualified individual is her assertion that she receives "ACCES[]-VR funding through the state."  AC at 8 ¶ 9.  But an assertion that Plaintiff receives disability benefits under a different statutory framework is insufficient to establish that she has a disability within the meaning of the ADA.  *See B.C. v. Mount Vernon City School Dist.*, No. 11-cv-1411, 2014 WL 4468082, at *7–8 (S.D.N.Y. Aug. 28, 2014) (noting ADA's definition of disability is stricter than IDEA's); *see also Veldran v. Brennan*, 408 F. Supp. 3d 111, 116 (E.D.N.Y. 2019) (finding receipt of disability benefits from Veteran's Administration did not establish a disability under ADA).  Because Plaintiff fails to plead that she is a qualified individual with a disability under the ADA or Rehabilitation Act, her claims arising thereunder (Count I) are dismissed.

Next, to establish a prima facie case of retaliation under the ADA, Plaintiff must show, in relevant part, that "[s]he engaged in an activity protected by the ADA."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  To engage in a "protected activity" is to take action "to protest or oppose statutorily prohibited discrimination."  *Goonan v. Fed. Res. Bank of N.Y.*, No. 12-cv-3859, 2014 WL 3610990, at *9 (S.D.N.Y. July 22, 2014) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)).  While "it is well established that seeking a reasonable accommodation for a disability constitutes protected activity," *Laface v. Eastern Suffolk Boces*, 349 F. Supp. 3d 126, 149 (E.D.N.Y. 2018), here, Plaintiff alleges only that she sought "assistance regarding disability-related financial hardship," AC at 11 ¶ 17.  Financial assistance is not a "reasonable accommodation," and therefore Plaintiff fails to state a claim.  *See Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir. 1995) (citing 42 U.S.C. § 12111(9))

21

(addressing meaning of "reasonable accommodation" under ADA and Rehabilitation Act by discussing the ADA's non-exhaustive list of methods of accommodation encompassed by the term, none of which indicate financial assistance but instead involve making facilities, roles, or schedules accommodating).  Plaintiff's only other assertion is that she was subject to "retaliatory" actions undertaken while her "disability-discrimination grievance[]" was still pending."  AC at 12 ¶ 18.  But as with her other claims, this constitutes nothing more than a "threadbare recital[] of the elements of a cause of action."  *See Iqbal*, 556 U.S. at 678.

Accordingly, Plaintiff's claims under the ADA and the Rehabilitation Act (Counts I and II) are dismissed for failure to state a claim upon which relief may be granted.

## IV.    Plaintiff's Claims under the FLSA

Plaintiff next brings a FLSA retaliation claim against Riyad and Cook (Count III). Although Plaintiff's FLSA allegations do not specify the Defendants she believes have wronged her, *see* AC at 15, construing the Amended Complaint liberally, Plaintiff seems to allege claims against Riyad and Cook based only on Plaintiff's "Accountability Flowchart," *see id.* at 23.  To establish a prima facie case of retaliation under the FLSA, a plaintiff must show: "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).  "[L]odging an internal complaint with an employer" constitutes a protected activity.  *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 114 (2d Cir. 2015); *see also Robinson v. De Niro*, 739 F. Supp. 3d 33, 81 (S.D.N.Y. 2023).  Here, Plaintiff claims that she was instructed to falsify her time sheets, and when she refused and "invoked her rights under the [FLSA]," she faced retaliation in the form of harassment, withholding of her wages, and reduced

work hours.  *See* AC at 8 ¶¶ 4–6, 8.  That Plaintiff "invoked her rights under the [FLSA]," *id.* at 6, does not make it "sufficiently clear and detailed for a reasonable employer to understand it . . . as an assertion of rights protected by the statute and a call for their protection," *Greathouse*, 784 F.3d at 117, but rather constitutes a mere "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and is insufficient to be considered a protected activity.  However, Plaintiff's "April 8 and May 4, 2025, demand letters reporting . . . FLSA violations" to Rodríguez do constitute protected activity.  *Id.* at 3–4 ¶ 6.

Nevertheless, the Amended Complaint fails to establish causation.  To establish causation, Plaintiff must show "that the retaliatory actions 'closely followed,' the protected activity or that there was a 'reasonably close temporal proximity' between the two."  *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 229 (E.D.N.Y. 2014) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013)).  Either way, for "conduct to be deemed actionable as retaliation, it must occur after the protected activity."  *Sealy v. State Univ. of N.Y. at Stony Brook*, 408 F. Supp. 218, 227 (E.D.N.Y. 2019).  The protected activity here, Plaintiff's demand letters that she submitted to Rodríguez, occurred on April 8, 2025, and May 4, 2025.  *See* AC at 3–4 ¶ 6.  But the alleged retaliation that Plaintiff suffered—the withholding of her Spring 2024 wages and reduction of her hours—occurred in 2024.  *See id.* at 8 ¶¶ 6, 8.  Put differently, it is indisputable that the alleged retaliation, the withholding of Spring 2024 wages and reduction of hours, occurred before the protected activity, the 2025 demand letters.[18]  Plaintiff therefore fails to establish causation and her FLSA retaliation claim (Count III) is dismissed.

---

[18]    Plaintiff also alleges that she "sent a registered Retaliation and Demand Letter" to Riyad in September 2024.  AC at 10 ¶ 13.  This assertion does not make it clear that Plaintiff was invoking her rights under the FLSA.  Nevertheless, even if the Court, construing the Amended Complaint liberally, were to view this assertion as a protected activity under the FLSA, Plaintiff

## V.      Leave to Amend

Typically, "a *pro se* complaint should not be dismissed without granting leave to amend at least once" whenever the Court "cannot rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Elder v. McCarthy*, 967 F.3d 113, 132 (2d Cir. 2020). "A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend). Where "the problem with [a *pro se* plaintiff's] causes of action is substantive[,] better pleading will not cure it," and leave to amend may be properly denied as "futile." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021). Moreover, dismissal of a *pro se* litigant's complaint under Rule 8 without leave to amend is permitted "where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible." *Salahuddin*, 861 F.2d at 42. Plaintiff has already received an opportunity to amend her complaint and was instructed by the Court to cure both substantive and Rule 8 deficiencies. *See* ECF No. 4. Therefore, "leave to amend would be futile because [P]laintiff ha[s] already had two bites at the apple and they have proven fruitless." *Harris v. Westchester Cnty. Med Ctr.*, No. 08-cv-1128, 2011 WL 2637429, at *4 (S.D.N.Y. July 6, 2011). Although Plaintiff does not seek leave to further amend the Amended Complaint, for the avoidance of doubt, the Court does not grant her such leave because

---

would still fail to establish causation because the alleged retaliation occurred prior to September 2024.

24

the claims that the Court is dismissing cannot be cured by amendment and Plaintiff has already had the opportunity to amend her claims.  Accordingly, the Court denies Plaintiff leave to amend, notwithstanding her *pro se* status.

## CONCLUSION

For the reasons set forth above, Plaintiff's Amended Complaint, filed *in forma pauperis*, is DISMISSED for failure to state a claim, and because it seeks monetary relief against Defendants immune from suit.  *See* 28 U.S.C. § 1915(e)(2)(B).  Plaintiff's Section 1983 Claims against CUNY, as well as Rodríguez and Kisel in their "official capacities," are dismissed without prejudice because they seek monetary relief from Defendants immune from suit under 28 U.S.C. § 1915(e)(2)(B)(iii), and because they are barred under the Eleventh Amendment.  *See Mallet*, 126 F.4th at 138; *Clissuras*, 359 F.3d at 83.  The remainder of Plaintiff's Section 1983 claims, as well as her ADA, Rehabilitation Act, and FLSA claims, are dismissed with prejudice for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to mail a copy of this Order to *pro se* Plaintiff at the address provided, note the mailing on the docket, enter judgment consistent with this Order, and close this case.

SO ORDERED.

/s/ Hector Gonzalez
    HECTOR GONZALEZ
    United States District Judge

Dated: Brooklyn, New York
       June 30, 2026